UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-21956-Civ-TORRES

LUIS ROBERTO ESCOBAR and all other
similarly situated,

        Plaintiff,

vs.

GCI MEDIA, INC.,
JOSHUA R. GLASSER,

        Defendants
_____/

**ORDER GRANTING DEFENDANTS'
MOTION FOR FINAL SUMMARY JUDGMENT**

        This matter is before the Court upon Defendant's Motion for Summary Final Judgment ("Motion") [D.E. 28], filed April 9, 2009, and Plaintiff's Response in Opposition ("Response") [D.E. 32], filed April 22, 2009.  After careful consideration of the motion, response, reply, relevant authority, and being otherwise fully advised in the premises, Defendant's Motion for Summary Final Judgment is Granted.

### *I.  BACKGROUND*

        Plaintiff, Luis Roberto Escobar ("Escobar"), was a web designer who worked for the Defendants, GCI Media ("GCI") and Joshua Glasser ("Glasser") from 2003 through 2008.  GCI is a full service marketing, advertising and public relations firm specializing in strategic and tactical consulting, branding, graphic design, web development and video production [D.E. 28-1].  Escobar was first hired by GCI in 2003

as an independent contractor. However, in 2004, after the company location moved from Glasser's apartment to an office space, the Defendant alleges that Escobar began to work at the company as a partner of the firm.

During his time at GCI, Escobar was in charge of the graphic design portion of the business. Although there was no partnership agreement, Escobar attended scheduled partner meetings and held himself out to be a partner of GCI. In 2007, Escobar began to drink at work, took trips during the work-week, and, in one instance, changed the company server password without notifying Glasser. As a result, their employment relationship began to deteriorate. In turn, Escobar was asked to work from home where he was able to choose the projects he wanted to work on for a percentage of the project rate.

Escobar alleges he left the firm in late 2007 some time after he was asked to work from home. However, according to GCI, Escobar is still considered a partner at the firm.

On July 10, 2008, the Plaintiff, Escobar, filed this action against both GCI and Glasser to recover overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). Plaintiff's complaint ("Complaint") [D.E. 1] alleges that the Plaintiff worked an average of 72 hours per week for Defendants from on or about 02/15/01 to on or about 09/15/07 at a rate of $12.15 an hour, but was never paid overtime wages as required by the FLSA for any of the hours that he worked in excess of forty hours weekly. Plaintiff also alleges that the Defendants "willfully and intentionally refused to pay Plaintiff the overtime wages" for which he claims entitlement to liquidated damages plus an award of attorney's fees, court costs and interest. [D.E. 1].

Defendants argue that Plaintiff cannot invoke the FLSA because he was not an employee, as defined by 29 U.S.C. § 207(a)(1), but instead a partner of the defendant corporation. [D.E. 28]. Defendants further contend that Plaintiff is not entitled to recover overtime hours under the FLSA because he has failed to produce sufficient evidence that he was an hourly-payed employee of the Defendant corporation. *Id.* Defendants seek an order granting summary judgment in their favor.

## II.  ANALYSIS

### A.  *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, it is well established that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see, e.g., Gonzalez v. Lee County Hous. Auth*,

161 F.3d 1290, 1294 (11th Cir. 1998).  Further, the existence of a "scintilla" of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In other words, the non-movant's response must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matsushita*, 475 U.S. at 592-94; *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### B.  *Governing FLSA Principles*

Under the overtime wage provisions of the FLSA, an employer cannot employ[1] an employee for more than forty hours a week without compensating him at a rate of at least one and one-half times the regular rate of employment.[2]  For the overtime wage provisions of the FLSA to apply, a worker must satisfy the requirements of an "employee" within the meaning of the Act.

Under the FLSA, an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  Moreover, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  A determination of employment status under the FLSA "is a

---

[1] Under Section 203(g) of the FLSA, to employ is to "suffer or permit to work."

[2] "No employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

question of federal law." *Jeanneret v. Aron's East Coast Towing*, Inc., 2002 WL 32114470 at *3 (S.D. Fla. Jan. 29, 2002) (citing *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996)).

To determine an individual's employment status, the court "must evaluate the economic realities of the individual case" by focusing on whether the plaintiff was economically dependent on the employer. *Antenor,* 88 F.3d at 932-33.[3]  In doing so, the court must look at the surrounding circumstances of the whole activity and not on isolated factors. *Goldberg v. Whittaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Aimable v. Long & Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994); *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1318 (S.D. Fla. 2001).  Further, "that the appellants may not have had the intention to create an employment relationship is irrelevant; 'it is sufficient that one person suffer or permit another to work.'" *Donovan,* 676 F.2d at 471  (quoting *Brennan v. Partida,* 492 F.2d 707, 709 (5th Cir. 1974)).

The economic realities test originated with Supreme Court cases from the 1940's distinguishing between employees and independent contractors. *Wheeler v. Hurdman*, 825 F.2d 257, 269 (10th Cir. 1987) (citing *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111, 129 (1944) (independent contractors and employees were distinguished for purposes of the National Labor Relations Act ("NLRA")); *United States v. Silk*, 331 U.S.

---

[3] Whether an employment relationship exists under the FLSA must be judged by the "economic realities" of the individual case and not by traditional common law principles. *Id.* at 929; *Donovan v. The New Floridian Hotel*, 676 F.2d 468, 470 (11th Cir. 1982).

704, 713-14 (1947) (same); *Bartels v. Birmingham*, 332 U.S. 126, 130-31 (1947) (independent contractors were distinguished for purposes of the Social Security Act ("SSA")). "Although many of the early cases involved interpretations under the NLRA and the SSA, the Supreme Court held that these decisions were persuasive in defining the coverage under the FLSA." *Id.* at 269 (citing *Rutherford*, 331 U.S. at 723).[4]

Nevertheless, while Congress amended the NLRA and the SSA to restore traditional common law principles to evaluate the distinction between an independent contractor and an employee, it made no such amendment to the FLSA. *Id.* at 269. As a result, courts still apply the economic realities test to determine employment status under the FLSA.

The difficulty with applying the economic reality factors, however, "is that they largely arise from cases involving alleged independent contractors." *Id.* at 269. To determine whether an independent contractor is an employee, the court applies factors that help decipher whether the employee owns his own enterprise or is a part of the employer's enterprise. These factors "are useless for drawing lines between people who are part of the same enterprise." *Id.* at 272.

For example, the crux of the economic realities test focuses on whether the employee is economically dependent on the employer. But in the context of a partnership, every partner is dependent on the business. Similarly, another unhelpful factor is whether the employer furnishes the equipment used. "It is also irrelevant in

---

[4] In *Rutherford*, the Court conceded that the there exists no definition in the FLSA, NLSA, or SSA, "that solves problems as to the limits of the employer-employee relationship under the Act." *Rutherford*, 331 U.S. at 729.

a partnership context to inquire whether the occupation requires skill" because any partner in an enterprise would be considered skilled to a certain extent. *Id*. at 272 (citing *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C. Cir. 1979)).

Most importantly, regarding the control factor prevalent in most independent-contractor/employee distinctions, "the 'domination' of a partner in assignment and supervision of work, billing, share of profits, and other matters can result from a myriad of wholly practical reasons existing from time to time in any partnership." *Id*. at 273; *cf. Fountain v. Metcalf, Zima & Company, P.A.*, 925 F.2d 1398, 1401 (11th Cir. 2009) (Eleventh Circuit concluded that plaintiff was a partner and not an employee eligible to sue under the Age Discrimination in Employment Act ("ADEA")).

In sum, characteristics pertinent to partnerships, such as the ability to share in profits, exposure to risk, and managerial control, "introduce complexities and economic realities which are not consonant with employee status." *Steelman v. Hirsch*, 473 F.3d 124, 129 (4th Cir. 2007) (citing *Wheeler*, 825 F.2d at 275). As a consequence of these complexities, we find that the traditional factors of the economic realities test are not applicable to the particular facts of this case. Instead, the court finds that the relationship between the parties here is more similar to, and thus governed by, the modified factors considered in the partnership cases decided by the Tenth Circuit in *Wheeler,* and the Southern District of New York in *Godoy v. Restaurant Opportunity Ctr. of New York,* 2009 WL 1269262 (S.D.N.Y. May 1, 2009).

In *Wheeler*, the Tenth Circuit considered whether a partner of an accounting firm was an "employee" for purposes of an FLSA compensation action. The court there concluded that:

> Status as a general partner carries important economic reality as well. Employees do not assume the risks of loss and liabilities of their employers; partners do. . . . Other common characteristics of partnerships are profit sharing; contributions to capital; part ownership of partnership assets, including a share of assets in dissolution of the enterprise; and the right to share in management subject to an agreement among the partners. These are economic realities, and no definition of employee is co-extensive. . . . When individuals combine to carry on a business as partners all these factors introduce complexities and economic realities which are not consonant with employee status.

*Wheeler*, 825 F.2d at 274-75.

Applying the *Wheeler* test, the district court in *Godoy* very recently found that plaintiffs, as putative co-owners of a business they were working to create, were partners and not employees for purposes of an FLSA action. *Godoy,* 2009 WL 1269252 at *4. After putting in hundreds of hours of work and sweat-equity, "plaintiffs never received their promised ownership interest or any other compensation for the work they performed." *Id.* at 4. As a result, they sued the defendant for compensation under the FLSA in exchange for ownership of the company. The court concluded, however, that "as Plaintiffs and Defendants were at all relevant times putative co-owners of the restaurant they were working to create, they were not, as a matter of economic reality, the employees of Defendants." *Id.* at 9. For example, the plaintiffs assumed the risks of loss and liabilities of the venture and had an opportunity to share in its profits. Their hard work represented their capital contribution and although their right to share in management is not alleged, they were members of the board charged with managing the company. *Id.* at 9. The Court, accordingly, dismissed the plaintiffs' case.

Within the context of this modified economic realities test, we turn then to the record in this case to determine if we can find that Plaintiff was not an employee of this partnership as a matter of law.

### C.     *Escobar was a Partner of GCI*

The sole issue here is whether Escobar was a partner or an employee of GCI and therefore eligible to recover overtime wages under the FLSA. If the Court determines, based on the undisputed facts, that Escobar was not an employee of GCI, it is not necessary to determine whether Escobar was paid on an hourly basis because only employees can recover under FLSA overtime wage provisions.  The fact pattern at hand – an alleged employee with clout and authority suing his alleged employer under "employee" status  –  appears to be a matter of first impression in this district and our circuit.

The undisputed facts show that Escobar was a partner and not an employee of GCI. Most importantly, Escobar admits that he was given the opportunity to share in the profits of the company.  He conceded that his salary was "bumped up" at the same time as defendant Glasser's salary was. [D.E. 28-2 at 31,33].  He also claimed these salary increases were "not for the extra hours, it was just because I needed more money", a commodity and benefit typical employees do not tend to have. [D.E. 28-2 at 38].  Moreover, when more money came in and greater profits generated, Escobar was given a salary raise. [D.E. 28-2 at 30].

The record also shows that he assumed the risks of loss and liabilities of the venture.  According to Escobar's deposition, Glasser could not afford to pay him more

9

because the business was not generating more money. As such, if the business declined, Escobar's salary suffered in response [D.E. 28-2 at 58]. Likewise, although not alleged in the complaint, the Court notes that Escobar's "right to share in management" is exemplified by his attendance at the scheduled "partner meetings", his input regarding both Camilo Ospina as a potential employee and Doug Mendoza as a potential partner, and the fact that GCI used his own internet domain to house client web-sites [D.E. 28-2 at 27, 48, 80, 86-88].

In addition, the fact that GCI did not fire Escobar after his relationship with defendant Glasser became strained further supports an absence of an employee-employer relationship. [D.E. 28-2 at 64]. For example, Escobar conceded he changed the password for the company server and refused to give it to the defendant simply because Glasser "had acted before asking." [D.E. 28-2 at 98-100]. It is also undisputed that Escobar was drinking at work, and according to his deposition, when Glasser and Mendoza confronted him about it, "you could say" what they said to him was not positive but negative. [D.E. 28-2 at 113]. Moreover, Escobar admitted that his frequent trips to Tampa created problems with both Glasser and Mendoza. [D.E. 28-2 at 111-112]. However, after all the inconvenience he caused, instead of firing him, Glasser and Mendoza asked him to work from home where he was able to choose the projects he wanted to work on for a percentage of the project rate. [D.E. 28-2 at 65].

Further, the undisputed evidence in the record shows that Escobar also took advantage of his status as "partner" in GCI. According to emails sent by Escobar to both Barbara Van Achte, a GCI employee, and defendant, Josh Glasser, he wrote: "I

10

hope this time you respect me as one of your boss and partner of this company to follow my way of work"; "Your pride is bigger than your responsibility with our company" ; "Don't forget I still a partner of this company that we build together." [D.E. 28-2 at 215-17]. Likewise, Escobar admitted in his deposition that, although he now claims to have lied, he may have held himself out as a partner in GCI for reasons of personal gain. [D.E. 28-2 at 98]. Moreover, Escobar conceded threatening to fire the bookkeeper, Theresa DeFrancis, if she did not comply with his orders, and conceded that he had the power to have someone fired. [D.E. 28-2 at 41-42].

Despite all this evidence in the record, Escobar claims that Defendant's supervision and control over him supports the inference that he was an employee. We agree, however, with the Tenth Circuit in *Wheeler* that the domination and supervision of one partner over another arises often in partnerships for very practical reasons. *Wheeler*, 825 F.2d at 273. The fact that there was some level of supervision and control does not automatically negate the existence of a partnership relationship.

In a law firm setting, for instance, the head of a particular department or practice area – a partner – exercises a great deal of supervision and control over other members of that department, partners and associates included. Yet, that does not mean that those partners within that department are no longer true "partners." The more relevant factors that apply to partnerships in an economic realities analysis could still demonstrate that those supervised partners are still partners of the partnership entity, not employees.

The same analysis holds true in the context of this particular partnership. The members of the partnership each had a unique role in the enterprise. Glasser certainly had significant control over most aspects of the partnership, and Escobar had a specific technical role that he played subject to Glasser's supervision. But that level of supervision does not negate the existence of a partnership, and specifically does not mean that Escobar does not qualify for partner status.

Moreover, the fact that Escobar was "on call 24/7" does not support the argument that he was an employee. To the contrary, after assessing the undisputed facts of this case, his continuous work on behalf of the partnership only supports the conclusion that he was a partner whose long hours represented his "capital contribution" to GCI. *See Godoy,* 2009 WL 1269252 at *9.

Upon careful consideration of the aggregate factors, we conclude that the undisputed evidence before the Court shows that no genuine issue of fact exists from which a reasonable jury could find that Escobar was an employee of GCI. "Taken together, the balance of these 'economic realities' weighs against the existence of an employment relationship in this case." *Godoy*, 2009 WL 1269252 at *9. Particularly, when all the inferences are drawn in Escobar's favor, the record supports the finding that, as with any partner, Escobar shared in the profits of the company, assumed the risks of loss and liabilities, had some right to share in management, and even contributed capital by means of his hard work. Further, Escobar took advantage of the authority and control he had at GCI by not only holding himself out as a partner but

12

by utilizing the position to his advantage. Moreover, the fact that Escobar was not fired after the relationship with his alleged employer, defendant Glasser, became strained solidifies the fact that Escobar held a position higher than employee at GCI.

Absent specific evidentiary support to refute the economic reality presented by the partnership here, we find that a reasonable jury could not find in his favor. Thus, the plaintiff has failed to fulfill his burden of proffering sufficient evidence to establish that he was an employee of the defendant corporation. Where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is proper. *Celotex,* 477 U.S. at 323; *e.g., Wheeler,* 825 F.2d at 277 (reversed the district court's denial of judgment as a matter of law for defendant after concluding that the plaintiff/partner was not an employee of the defendant accounting firm); *Godoy*, 2009 WL 1269252 at *9 (granted motion to dismiss as a matter of law because plaintiffs were not employees under the FLSA and more resembled partners at a firm).

Summary judgment is, therefore, unavoidable based on this record. As a result we need not address the remaining issues raised in the Motion.

***

### *III.   CONCLUSION*

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Defendant, GCI , Inc. and Joshua R. Glasser's , Motion for Summary Final Judgment [**D.E. 28**] is **GRANTED.**   Final judgment shall be entered in Defendant's favor by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of June, 2009.

                                          EDWIN G. TORRES
                                          United States Magistrate Judge